

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | | |
|---|---|---|---|
| DANIEL MCKEY, | § | No. 08-20-00042-CV | |
| Appellant, | § | Appeal from | |
| v. | § | the 119th District Court | |
| LINDA STALLINGS, | § | of Tom Green County, Texas | |
| Appellee. | § | (TC#B-15-0093-F) | |
| | § | | |

## CONCURRING OPINION

I join the court's opinion because I agree the record includes sufficient evidence to demonstrate the trial court did not abuse its discretion in ordering supervised visitation for Father. I write separately simply to highlight the nature and extent of the evidence presented at the modification hearing in support of the trial court's ruling.

A trial court has the discretion to modify the duration and regularity of visits when there has been a showing of a material and substantial change in circumstances and that the modification would be in the best interest of the child. TEX.FAM.CODE ANN. § 156.101(a)(1); *Trevino v. O'Quinn*, No. 03-18-00197-CV, 2019 WL 4125125, at *4 (Tex.App.—Austin Aug. 30, 2019, no pet.)(mem. op.). The trial court's primary consideration will be the best interest of the child. *Id*. An order that restricts a parent's right to possession and access to a child may not impose

restrictions beyond those necessary to protect the child's best interest. TEX.FAM.CODE ANN. § 153.193; *Matter of Marriage of Harrison*, 557 S.W.3d 99, 131 (Tex.App.—Houston [14th Dist.] 2018, pet. denied). An abuse of discretion only occurs when the record does not contain evidence supporting a finding that such restrictions are in the best interest of the child. *In re P.A.C.*, 498 S.W.3d 210, 219 (Tex.App.—Houston [14th Dist.] 2016, pet. denied).

The prior order, entered in the summer of 2017, altered the exchange provisions and summer visitation but it remained that Father would have visitation with I.J.M. on the first, third, and fifth weekend of the month. Mother filed her Petition to Modify and obtained an Ex-Parte Temporary Restraining Order in March of 2018. Temporary Orders were entered on April 13, 2018, which restricted Father's visitations to "at least two (2) visits with the child, her counselor, Brent Dooley, and Laura Stallings," and ordered any visits thereafter would be at the recommendation of Brent Dooley. Additional temporary orders were entered on December 5, 2018 after resetting the final hearing that was to take place on December 4 because the court's order previously entered had not yet been completed and further clarified that Father's visitations remained restricted. A final hearing was held on August 13, 2019 in which the trial court heard testimony from three witnesses, Counselor Dooley, as well as Mother, and Father, and received documentary evidence to include counseling progress notes.

The trial court's findings of fact and conclusions of law indicate it imposed limitations to protect the best interest of the child because the child's counselor recommended it, because Father had demonstrated that either he will not comply with court orders or counselor recommendations, or he does not comprehend such, and because of his behavior in court. The trial court concluded that Father did not act in the best interest of I.J.M., and the court did not trust he would follow court orders without supervision, and therefore the child's best interest could only be protected

through supervised visitation. In viewing the evidence presented in the light most favorable to the judgment, the trial court could have concluded that restricting Father's periods of possession and requiring the visitations be continuously supervised were in I.J.M.'s best interest. *Harrison*, 557 S.W.3d at 131; *In re P.A.C.,* 498 S.W.3d at 219.

The counselor, Brent Dooley, testified to the two counseling visits that had taken place on January 21, 2019 and January 28, 2019. The counselor reported he had discussed the concerns he had regarding I.J.M.'s disturbances surrounding her visits with her Father and her being "reprimanded for expressing her feelings." Father assured the counselor that he would send something in writing about how he would take care of these problems so they would not happen in the future, which was never completed. The counselor testified that he could not recommend unsupervised visits between Father and I.J.M., at the time of the hearing, because these concerns had not been addressed as far as he was informed.

Mother testified that I.J.M. had just started attending the fourth grade in school. At the time of the hearing, I.J.M. had been prescribed medication for ADHD and anxiety, which she had been taking for about a year and half. Without objection, Mother testified that during previous periods of possession by Father, I.J.M. reported she was subjected to a public punishment which included being physically placed in a corner at Target and told by her father "to look at her rude and selfish face in the mirror in Target numerous times." At the time of the final hearing in August 2019, Mother testified Father had not had an unsupervised visit with I.J.M., which were held apart from the visits at the counselor's office, since February 2018. Mother also stated that Father had not called or communicated with I.J.M. "in over a year." Lastly, Mother testified that I.J.M. would come back from visitations with her father with dark circles under her eyes, stomachaches, and fever. Mother requested supervised visitation initially that would work towards unsupervised.

Appearing pro se, Father testified he had not seen I.J.M. since the last counseling visit on January 28, 2019. Contrary to temporary orders which had restricted Father's visitation, he once attempted to pull I.J.M. out of school to attend an appointment with the counselor in which he did not coordinate with Mother. When asked about the incident when I.J.M. was publicly placed in a corner and told to look at her rude self, Father stated "I don't know that she was ever told that and neither do you." Father also explained he never complied with Counselor Dooley's recommendations because his visitations were denied and therefore, he had nothing to report to Counselor Dooley. He stated he believed I.J.M.'s discomfort and anxiety should be addressed by her moving to Austin with him, and later retracted stating his requests to the court would be to modify the exchange location. Father testified that his requests for visitations were all denied or ignored, he did not attempt to communicate with her because he was sure Mother would interfere with such communication, but stated he refused to give up.

Because the trial court is the sole judge of the credibility and demeanor of witnesses, the supervised visitation order reflects that the court believed the testimony of the counselor and of Mother with respect to Father's lack of follow through with counseling recommendations to address I.J.M's concerns about visits with her father. *Harrison*, 557 S.W.3d at 133.

Father argues that ordering supervised visitations based on the opinion of a counselor who had not seen the child for months prior to testifying was an abuse of discretion. However, on review of the record, it shows the trial court did not base its ruling solely on the counselor's recommendation. Rather, the trial court more broadly considered testimony not only from the counselor but also from Mother and Father. Furthermore, the counselor's testimony was not considered solely for his recommendation but also for the showing that Father had failed to follow through with court orders to meet with the counselor to develop a plan to improve his interactions

with I.J.M. to better understand and meet her emotional needs. Father admitted he had failed to develop such plan meant to address I.J.M.'s concerns about her visits with him and his treatment of her when she expressed her feelings.

Viewing the record favorable to the trial court's judgment, as required on review, I concur with the majority that the trial court had sufficient evidence to support its ruling that supervised visitation with Father would be in the child's best interest. *Harrison*, 557 S.W.3d at 131-33 (finding trial court did not abuse its discretion in ordering supervised visitations for mother when there was evidence she failed to conduct herself in a manner that furthered the children's best interest, she failed to comply with prior court orders, testimony on her parenting, and recommendation by counselor); *In re P.A.C.*, 498 S.W.3d at 219 (holding no abuse of discretion in restricting periods of possession and supervising visits when there was evidence mother failed to follow prior court orders, mother attempted to alienate the children from father, and counselor recommended supervised visitations); *Trevino*, 2019 WL 4125125, at *4 (holding no abuse of discretion when the trial court ordered mother's possession and access to the child to be supervised when the mother was previously the primary joint managing conservator because there was evidence of mother violating court orders, making false reports, and improper conduct with the child).

March 10, 2021

GINA PALAFOX, Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.